IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ALLSTATE INSURANCE COMPANY**,

   Plaintiff,

vs.              No. CIV 00-382 LCS/KBM

**INDEPENDENT APPLIANCE &**
**REFRIGERATION SERVICE, INC., et al.**

   Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Michael Meister's Motion for Summary Judgment filed September 22, 2000 (*Doc. 16*), Plaintiff's Motion for Summary Judgment on the Business Auto Policy Claim filed September 26, 2000 (*Doc. 14*), and Plaintiff's Motion for Summary Judgment on the Personal Auto Policy Claim filed October 9, 2000 (*Doc. 20*). The Court having considered the pleadings, relevant law, and otherwise being fully informed, finds that Defendant's Motion for Summary Judgment is not well taken and should be **denied**; that Plaintiff's Motion for Summary Judgment on the Business Auto Policy is not well taken and should be **denied**; and that Plaintiff's Motion for Summary Judgment on the Personal Auto Policy is well taken and should be **granted**.

**I.**  **BACKGROUND**

The parties do not dispute any of the following material facts. Defendant, Michael

Meister[1] was involved in a car accident with an underinsured[2] motorist in which Mr. Meister sustained bodily injuries. At the time of the accident, Mr. Meister was driving a vehicle insured by Allstate Insurance (hereinafter "Allstate") under a Business Auto policy. The policy covered two vehicles which carried uninsured motorist limits for bodily injury damages in the amount of $60,000. Separate premiums were paid for the uninsured motorist coverage for the two vehicles under the Business Policy. Mr. Meister, along with his wife, Brenda Meister, are the sole shareholders, directors and officers of Independent Appliance & Refrigeration Service, Inc. (hereinafter "Independent Appliance").

In 1989, Mr. Meister applied for the Business Policy identifying the following as the named insured: "Michael Meister d/b/a Independent Appliance & Refrigeration Service." The Business Policy was issued accordingly identifying Michael Meister as the named insured. In 1991, the Meisters incorporated Independence Appliance and took steps to change their Business Auto Policy. Brenda Meister contacted Allstate agent Philip Russell, advised him of the incorporation and requested a name change.

The following are facts which are disputed between the parties. Both parties disagree as to the nature of the name change on the Business Auto Policy. Mr. Meister asserts that his wife contacted Mr. Russell and requested that the name on the Business Policy be changed from "Michael Meister d/b/a Independent Appliance & Refrigeration Service" to "Michael Meister d/b/a Independent Appliance & Refrigeration Service, **Inc.**" Mr. Meister also contends that at all

---

[1] Since Independent Appliance & Refrigeration Service, Inc. did not file in conjunction with Michael Meister the Motion for Summary Judgment, Michael Meister will hereinafter be referred to as the "Defendant."

[2] Underinsured insurance provides for situations in which offending motorists do not carry enough coverage to pay damages incurred by the injured party. STEDMAN'S MEDICAL DICTIONARY 1526 (26th ed. 1995).

times, both he and his wife intended Michael Meister to be the insured under the policy and that Mr. Russell, the Allstate agent, also intended that Mr. Meister's name remain on the policy.

Allstate asserts that "Mr. Meister's request to the agent to change the named insured to the corporation is evidence of intent to change the named insured under the policy and that the policy clearly and unambiguously specified the corporation as the only insured." (Pl.'s Res. ¶ 5 and 7). Allstate further asserts that the policy was then reissued to Independent Appliance & Refrigeration Service, Inc. listing Independent Appliance & Refrigeration Service, Inc. as the only named insured under the policy. There is also a dispute as to whether Mr. Russell communicated to the Meisters that the name on the policy would in fact be changed thereby including Mr. Meister's name.

The uninsured motorist endorsement granting coverage under the business auto insurance policy defined the following as an insured:

**The following are 'insureds' for UNINSURED MOTORIST COVERAGE:**

1. Any Class 1 'insured,' meaning you, if you are an individual. If you are an individual, your 'family member' is also a Class 1 'insured.'
2. Any Class 2 'insured, meaning:
   a. You, if you are not an individual.
   b. Anyone other than a Class 1 'insured' while 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction. Anyone other than a Class 1 'insured' includes your partners, employees, directors or shareholders. (Compl. Ex. A).

The policy also provided an anti-stacking provision which stated the following:

<u>The Limit of Insurance available to a Class I 'insured' may differ from the Limit of Insurance available to a Class 2 'insured.'</u> Read carefully the following paragraphs

3

>and the description of Class 1 'insured' and Class 2 'insured' in the WHO IS AN INSURED provision to determine the applicable Limit of Insurance.
>
>1. Regardless of the number of covered 'autos, insureds,' premiums paid, claims made or vehicles involved in the 'accident,' the most we will pay for all damages resulting from any one 'accident' is the limit of Uninsured Motorists Coverage shown in the Schedule for Declarations. <u>If there is more than one covered 'auto,' and 'bodily injury' or 'property damage' is sustained by a Class 1 'insured,' our Limit of insurance for any one 'accident' is the sum of the limits applicable to each covered 'auto.'</u> (Compl. Ex. A) (emphasis added).

At the time of the accident, Mr. Meister was also insured under a Personal Policy held by Allstate, which insured four vehicles with underinsured/uninsured motor coverage limits that are in dispute between the parties. Mr. Meister contends that it had limits in the amount of $25,000 per person/$50,000 per vehicle, whereas, Allstate contends that the policy had limits of $25,000 per person only. The auto policy declaration page contained one policy number and listed four separate premium charges that came to a total of $580.70. (Compl. Ex. B). Although, the policy contained an anti-stacking provision, it allowed stacking only if the insured maintained more than one coverage or more than one premium. (Pl.'s Res. Brief, Group Ex. 1). In 1990, Allstate sent out a "Coverage Update" to its insureds stating that it had initiated a single premium policy, that stacking was no longer available, and that policy holders should think about purchasing more coverage. (Pl.'s Res. Brief, Group Ex. 1).

## II.   STANDARD OF REVIEW

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine

issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F. 3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999). A federal court sitting in diversity applies the substantive law of the forum state. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

### III.   DISCUSSION

#### A.   Business Auto Policy Claim

The Defendant argues within his Motion for Summary Judgment that he was a class one named insured under the business auto policy and therefore entitled to stack available uninsured motorist coverages. Mr. Meister asserts that because the policy is ambiguous on its face, it must be construed in favor of the insured. He also argues that because Allstate's representative led him to believe that he was the named insured and the fact that the anti-stacking provision contravened

5

public policy, he should be entitled to stack the two coverages in the policy. Allstate argues that the policy language was clear and unambiguous. It clearly stated that Independent Alliance was the only name insured and that Mr. Meister was considered a class two insured pursuant to policy definitions, thus preventing him from stacking the coverages.

The relevant issue pursuant to this claim is whether Mr. Meister should be considered a class one insured under the Allstate policy and therefore be entitled to stack coverages. New Mexico courts have recognized a distinction between class one and class two insureds. *See Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 646 P.2d 1230 (1982). Class one insureds are generally those persons who are named insureds under a policy, including the owner, his or her spouse, and any relatives living in the household. *See Konnick v. Farmers Ins. Co. of Ariz.*, 103 N.M. 112, 703 P.2d 889 (1985). Class two insureds are occupants of an insured motor vehicle at the time of an accident. *See Morro v. Farmers Ins. Group*, 106 N.M. 669, 671, 748 P.2d 512, 513 (1988). The two classes of insureds have different rights as to when and where the insured is covered. Class one insureds "are covered by policies no matter where they are or in what circumstances they may be; coverage is not limited to a particular vehicle." *See Gamboa v. Allstate Ins. Co.*, 104 N.M. 756, 758, 726 P.2d 1386, 1388 (1986) (construing *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 533 P.2d 100 (1975)). Class two insureds, on the other hand, "enjoy insured status only while they occupy an insured vehicle." *See Konnick*, 103 N.M. at 115, 703. The distinction between classes of insureds is also relevant to whether one may "stack" uninsured motorist coverages.[3] Generally speaking, class one insureds may "stack" uninsured

---

[3] Stacking refers to "an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until all damages either are satisfied or the total policy limits are exhausted." *See Ponder v. State Farm Mutual Automobile*

motorist coverages, whereas class two insureds may not do so. *See Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 646 P.2d 1230 (1982). In order to determine whether Mr. Meister may stack uninsured motorist benefits, it is therefore necessary to decide whether he was a class one insured under the express terms contained in the Business Auto Policy.

New Mexico courts "resolve questions regarding insurance policies by interpreting their terms and provisions in accordance with the 'same principles which govern the interpretation of all contracts.'" *See Ponder*, 12 P.3d at 964 (quoting *Rummel v. Lexington Ins. Co.*, 1997 NMSC 041, § 18, 123 N.M. 752, 945 P.2d 970). Analysis of insurance policies begins with the primary goal of "ascertain[ing] the intentions of the contracting parties with respect to the challenged terms at the time they executed the contract." *See Strata v. Mercury*, 121 N.M. 622, 916 P.2d 822 (1996). "When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *See CC Housing Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987). It is black letter law that, absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and thus cannot create a new agreement for the parties. *See Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129, 793 P.2d 258, 259 (1990).

To decide the issue of whether Mr. Meister is a class one insured under the policy terms, the Court must first look to the policy itself, and determine if it is ambiguous. *Id*. The question of

---

*Insurance Co.*, 2000-NMSC-033, 12 P.3d 960, 964 (N.M. 2000).

whether an ambiguity exists is a question of law to be decided by the court.[4] *See Levenson v. Mobley*, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). A contract is deemed ambiguous only if it is reasonably and fairly susceptible to different constructions. *See Vickers v. North Am. Land Devs. Inc.*, 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). In construing insurance policy provisions, "'[a]mbiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy.'" *See Ponder*, 12 P.3d at 964 (citing *Rummel*,1997 NMSC 041, § 19).

In this case, when assessing the language found within the four corners of the policy agreement, it clearly lists Independent Appliance & Refrigeration Service, Inc. as the only named insured. The policy also states:

> WHO IS AN INSURED.
> The following are 'insureds' for UNISURED MOTORISTS COVERAGE:
>
> 1. Any Class 1 'insured' meaning <u>you, if you are an individual</u>. If you are an individual, your 'family member' is also a Class 1 'insured.'
>
> 2. Any Class 2 'insured,' meaning:
>    a. <u>You, if you are not an individual</u>
>    b. Anyone other than a Class 1 'insured' while 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction. Anyone other than a Class 1 'insured' <u>includes your partners, employees, directors or shareholders</u>. (Compl. Ex. A). (emphasis added).

---

[4] Absent any ambiguity, policy provisions need only be applied, rather than construed or interpreted. *See Richardson v. Farmers Ins. Co.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991).

New Mexico courts are no longer restricted by the language found within the four corners of an insurance policy. *See Ponder*, 12 P.3d at 964. "In abandoning reliance only on the four-corners approach, courts are now allowed to consider extrinsic evidence in determining whether an ambiguity exists in the first instance, or to resolve any ambiguities that a court may discover." *Id*. The *Ponder* court conclusively reaffirms the holdings in *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508-09, 817 P.2d 238, 242-43 (1991), *Mark V v. Mellekas*, 114 N.M. 778, 781-82, 845 P.2d 1232, 1235-36 (1993), and *Rummel v. Lexington Ins. Co.*, 123 N.M. 752, 945 P.2d 970 (1997).[5] In *Rummel*, the court not only acknowledged that it may look to extrinsic evidence to determine ambiguities but that "[i]f ambiguities cannot be resolved by examining the language of the insurance policy, [it] may look to extrinsic evidence such as the premiums paid for insurance coverage, the circumstances surrounding the agreement, the conduct of the parties, and oral expressions of the parties' intentions." The *Ponder* court did in fact limit this deference by stating "in examining extrinsic evidence we will not give effect to a party's undisclosed intentions. 'As a matter of law, one party's subjective impressions, innermost thoughts, or private intentions, do not create an ambiguity' . . . [W]e determined that a party's statements of unilateral, subjective intent, without more, are insufficient to establish ambiguity in light of clear contract language." *Ponder*, 12 P.3d at 965. (citing *Hoggard v. Carlsbad*, 1996-NMCA-003, § 15, 121 N.M. 166, 909 P.2d 726.). Therefore, in determining ambiguity, this Court may look to surrounding circumstances but not to the subjective intent of the policy holder at the time the agreement was

---

[5] The court in *Mark V* stated that "[w]ithout a full examination of the circumstances surrounding the making of the agreement, ambiguity or lack thereof often cannot properly be discerned." *Mark V*, 114 N.M. at 781.

made.

In *Ponder*, the court initially found that the alleged insured was not a class one insured but a class two insured under the terms of the policy. *See Ponder*, 12 P.3d at 965. However, after a review of circumstances surrounding the agreement, the conduct of the parties, and their oral expressions, it concluded that the policy statement was ambiguous and that the alleged insured was in essence a class one insured. *Id.* [6]

Examination of extrinsic facts in this case yields a similar outcome. In Ms. Meister's affidavit, she stated that she requested Mr. Russell "change the named insured identification to Michael Meister d/b/a Independent Appliance & Refrigeration Service, Inc." (Ms. Meister Aff. ¶ 9). Mr. Russell testified within his deposition testimony, that when he submitted the customer service request form, he requested that the new named insured should be listed as, "Micheal Meiser, doing business as Independent Appliance & Refrigeration Service, Inc." (Russell Dep. pg. 37). The exhibits contain a copy of the form, which in fact, confirms that Michael Meister's name is attached to the corporation's name. (Def.'s Brief Ex. E). Mr. Russell also stated that he knew Mr. Meister and his business, that he intended to make the change and that he did not know why it was not changed. (Russell Dep. pg. 37). [7] He clearly indicated in his testimony that he believed the policy included Mr. Meister's name and that that is why he never notified Mr. Meister of his change in coverage. (Russell Dep. pg. 37). Also, Mr. Russell stated that the policy provision regarding the definition of the insured was confusing and that he could interpret it two different

---

[6] The court looked to extrinsic evidence such as the alleged insured mother's conversations with the insurance agent. *Ponder*, 12 P.3d at 965.

[7] Mr. Russell has been working for Allstate as an insurance agent since 1967. (Ex. C. pg 7).

10

ways.  (Russell Dep. pg. 53).

The extrinsic evidence in this case supports a finding that the policy was ambiguous due to the surrounding circumstances at the time the policy was changed. The affidavits and deposition testimony, as well as some of the exhibits, present enough information regarding the surrounding circumstances and intentions of the parties at the time the new policy was issued in order to raise a question of fact. Not only could Ms. Meister conceivably receive the impression that the agent changed the name to include Mr. Meister on the insurance policy, but the agent himself testified that the name change went through.

Since the surrounding circumstances in this case are remarkably similar to the circumstances found in *Ponder*, this Court must accede to the *Ponder* analysis. There is a sufficient amount of extrinsic evidence that leads me to find an ambiguity under the circumstances surrounding the formation of the policy. Therefore, upon consideration of these circumstances, I find that the policy is in fact ambiguous. "Once ambiguity is determined to exist, grant of summary judgment is improper."*Jaramillo*, 117 N.M. at 340. Since construction of an ambiguous contract depends on extrinsic facts and circumstances, the terms of the agreement become questions of fact. *See Lopez v. Foundation Reserve Ins. Co., Inc.*, 98 N.M. 166, 168, 646 P.2d 1230,1232 (citing *Young v.Thomas*, 93 N.M. 677, 604 P.2d 370 (1979). Therefore, since there is a genuine issue of material fact as to the interpretation of the policy, summary judgment is precluded as a matter of law. *Id*.

Mr. Meister also argues within his motion for summary judgment that Allstate is estopped from re-litigating an issue previously decided by another court of jurisdiction. The court finds this argument to be unpersuasive. As applied in the Tenth Circuit, the elements of collateral estoppel

11

are: "(1) the issue previously decided is identical with the one presented in the action in question, (2) <u>the prior action has been finally adjudicated on the merits</u>, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *See Bravos v. E.P.A.*, 2001 WL 8310 (10th Cir. 2001) (citing *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (emphasis added). The Defendant refers to the case of, *Padilla v. Allstate*, CV 98-293, filed in the Eighth Judicial District, County of Taos, State of New Mexico. The opinion the Defendant relies upon is the granting of summary judgment against Allstate that was reversed on appeal. The Court reversed summary judgment and remanded the matter to the district court for trial on the merits where the parties would be entitled to present evidence going to the meaning of the policy.[8] Thus, collateral estoppel does not apply because this matter was not fully adjudicated.

Therefore, the Defendant's Motion for Summary Judgment based on the business auto policy should be denied and the Plaintiff's Motion for Summary Judgment on the Business Auto Policy should also denied.

### B.     Personal Auto Policy Claim

The Defendant argues that the personal auto policy language attempting to limit stacking of the four uninsured motorist liability for bodily injury coverages is ambiguous and therefore must be construed in favor of Mr. Meister to permit stacking of said coverages. The Plaintiff argues that its policy language prohibiting the aggregation of stacking is clear and unambiguous and that it satisfies the *Rodriguez* standard for anti-stacking provisions.

---

[8] After the entry of reversal, the parties to this case settled.

The Court finds the Defendant's argument is unpersuasive. "Exclusionary provisions in an insurance policy will be enforced if they (1) are clear and unambiguous in meaning, and, (2) if they do not conflict with public policy stated in express statutory language or by indication of legislative intent." *Jimenez*, 107 N.M. at 324.  However, anti-stacking clauses are particularly repugnant to public policy when the injured insured has paid separate premiums for underinsured/uninsured motorist coverage on each vehicle. *Id*. The underlying rationale is that if the damages an insured has suffered have exceeded the policy limits, the insured has a reasonable expectation of coverage under the polices he or she has purchased for their benefit. *Id*. Despite the strength of this policy argument, it may be possible for Insurance companies to administer a truly unambiguous anti-stacking provision. The court in *Rodriguez* stated that an anti-stacking provision may be possible to give effect "provided it plainly notifies the insured that only one premium has been charged for one insurance coverage, that the coverage provides personal accident insurance that cannot be stacked regardless of the number of vehicles covered by the policy, and that the insured should bear this feature in mind when purchasing insurance." *Rodriguez v. Windsor*, 118 N.M. 127, 133, 879 P.2d 759, 765 (1994).

As discussed earlier in this opinion, ambiguous policies are interpreted in favor of the insured. *See Ponder*, 12 P.3d at 967. The personal policy states that "if you have two or more autos insured in your name and one of these autos is involved in an accident, only the coverage limits shown on the declaration page for that auto will apply." (Pl.'s Res. Brief, Group Ex. 1, pg. 4). The declaration page lists the premiums for the four vehicles separately. (Pl.'s Res. Brief, Group Ex. 4).  If one were to construe the policy and its reference to the declarations page without any other kind of notification, one may interpret the premiums listed on the declaration

13

page as four separate premiums. However, Allstate sent to its insureds in 1990 a Coverage Update which effectively notified insureds of Allstate's single premium policy.[9] The Update also stated that stacking was no longer part of the insureds' policies and that their potential recovery is lower if they have more than one vehicle on their policy. (Pl.'s Res. Brief, Group Ex. 1, pg. 4). The Update also suggested that the insured may want to increase their coverage due to the change in their policy. (Pl.'s Res. Brief, Group Ex. 1, pg. 4).

After reviewing the standard set forth in *Rodriguez* and applying the facts of this case, the Court finds that Allstate took the necessary steps set forth in *Rodriguez* in order to effectuate an anti-stacking policy. *Rodriguez* states that the insurer must notify the insured that only one premium is being charged, that coverage cannot be stacked, and that insured should bear this in mind for the future. *Rodriguez*, 118 N.M. at 133. Allstate's "Update" clearly and unambiguously sets forth these elements. An insured cannot interpret a policy update in any other way.

The Defendant argues that the *Rodriguez* court was clear in its holding that such notice must be a part of the policy itself. After reading *Rodriguez*, I fail to see this requirement. The opinion merely states that "it may be possible to give effect to a truly unambiguous anti-stacking clause, provided it plainly notifies the insured." *Rodriguez*, 118 N.M. at 133. It says nothing about the notice being exclusively within the policy, only that it provide notice to the insured.

The Defendant's final argument asserts that Allstate is estopped from raising the personal auto policy claim because Allstate previously litigated this identical issue in the case of, *Martinez*

---

[9] The update stated that "[p]reviously, Coverage SS for bodily Injury applied separately to each of your insured vehicles, and a separate premium was charged for each vehicle. Now, when you purchase Coverage SS for Bodily Injury, one premium will be charged to cover all motor vehicles insured under your policy." (Pl.'s Res. Brief, Group Ex. 1, pg. 4).

14

*v. Allstate Insurance*, Civ. No. 96-1031 MV/JHG. The Court restates the requirements for collateral estoppel. A party must establish an identical issue, a final adjudication, privity with a party, and full and fair opportunity to litigate. *See Bravos v. E.P.A.*, 2001 WL 8310 (10th Cir. 2001) (citing *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000). In the *Martinez* case, the court entertained a completely different issue than the one presented in this case. In that case, Allstate did not notify the insured of the changed coverage. In this case, Allstate sent out a Coverage Update which effectively notified the insureds of Allstate's single premium policy and its anti-stacking effect. Therefore, without establishing all of the elements of collateral estoppel, the Defendant's argument must fail.

Therefore, the Court finds that the Defendant is precluded from stacking his coverage due to sufficient notice that his policy no longer allows multiple premiums nor stacking. Hence, the Defendant's Motion for Summary Judgment based on the personal auto policy should be denied and the Plaintiff's Motion for Summary Judgment on the Personal Auto Policy should be granted.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment filed September 22, 2000 (*Doc. 16*), is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment on the Business Auto Policy Claim filed September 26, 2000 (*Doc. 14*), is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment on the Personal Auto Policy Claim filed October 9, 2000 (*Doc. 20*) is **granted**.

**IT IS SO ORDERED.**

_____
**Leslie C. Smith**
**UNITED STATES MAGISTRATE JUDGE**